**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:09cr365** |
| **v.** | : | **(Judge Munley)** |
| **JORGE VALDEZ a/k/a** | : | |
| **ROBERTO VASQUEZ** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court for disposition is Defendant Jorge Valdez, a/k/a Roberto Vasquez's (hereinafter "defendant") motion to suppress.   The court held a suppression hearing, and the parties filed briefs supporting their positions.  The matter is thus ripe for decision.

**Background**

The government charges defendant with possession with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(A) and carrying and possessing a firearm during and in relation to, and in furtherance of a drug trafficking felony, in violation of 18 U.S.C. § 924(c).  (Doc. 1, Indictment).

The police performed several searches in the instant case. Defendant challenges a search of the property area outside the residence situated at 183 Strawberry Hill Rd., Sciota, Pennsylvania performed on October 14, 2009.  Defendant evidently lived at this residence at some point, although someone else leased it.  (Notes of Testimony, Apr. 5, 2011 "N.T." at 11 -12).
The lease does not contain defendant's name.  (Id. at 12).

The search at issue occurred because the Drug Enforcement Agency ("DEA") received confidential information that a large amount of cocaine and two million dollars in cash could be found on the property.

(N.T. at 6).   The informant also indicated that the police should act urgently in searching for the material before the defendant succeeded in obtaining assistance to remove the drugs and money. (Id.)

The police then went to the property and obtained the consent of the residence's landlord, Mary Czekoj-Wilusz,  to perform the search.  (Id. at 6 - 7).   Czekoj-Wilusz indicated that she had leased the house to Jaime Roacho.  Although she leased the house, she maintained access to almost five acres of property, a commercial garage and equipment located on the property.  (Id. at 8).  She and her husband had daily access to the property.  (Id.)   The DEA did not search inside the residence on this date, but searched on the property, which is where the informant indicated the drugs could be found.  (Id. at 9).  Under a bathtub-spa unit behind the garage, the police found thirteen (13) kilograms of cocaine, a money counter, a heat sealer, bags and rubber bands.   (Id. at 10 - 11, 21).  They found the cocaine inside a duffle bag, and the other paraphernalia inside a black garbage bag and a small soft-sided cooler.  (Id. at 21).

Defendant seeks to suppress this evidence.  He argues that the warrantless search is invalid because the landlord did not have authority or apparent authority to consent to the search.  The government's position is that the landlord did have authority because the renter had fled and, at the time of the search, the defendant resided in prison not at the residence. Moreover, according to the government, defendant lacks standing to bring the suppression motion as he was a short-term guest of the residence and actually in jail at the time of the search.  The court will address these issues *in seriatim*.

## I. Standing

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction." Skinner v. Rwy. Labor Exec. Ass'n, 489 U.S. 602, 613 - 14 (1989).  By its own terms, the Fourth Amendment prohibits "unreasonable" searches and seizures.   Whether a search and seizure is reasonable, "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985).

The government initially contests defendant's standing to bring the instant motion.  A defendant challenging a search and seizure based upon the Constitution's Fourth Amendment bears the burden of establishing that the government violated his rights.   Rakas v. Illinois, 439 U.S. 128, 130 n. 1 (1978).

In order to establish a violation of his rights, the defendant must first establish standing, or in other words, that he had a reasonable expectation of privacy in the place searched.  The Third Circuit Court of Appeals has described the defendant's burden as follows:

> To invoke the Fourth Amendment's exclusionary rule, a defendant must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure. These rights are violated only if the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. Significantly, a defendant's Fourth Amendment rights are not violated by the introduction of evidence obtained in violation of a third party's

> rights.  Because Fourth Amendment rights are "personal," the proponent of a motion to suppress bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the place searched. The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated.

United States v. Stearn, 597 F.3d 540, 551 (3d Cir. 2010).

In the instant case, the government asserts that the defendant has no standing to challenge the search.  We agree.

Defendant's motion itself and his initial brief do nothing to establish his standing, that is to say, his reasonable expectation of privacy. Additionally, he presented no witnesses or exhibits at the suppression hearing on this matter.   Rather, defendant asserts that he met his burden as follows: "it is the government's own investigation that corroborates the his [sic] residency and expectation of privacy at the Strawberry Hill Road property." (Doc. 61, Def. Br. at 2).   In other words, to establish standing, the defendant relies upon the affidavit of probable cause that the government drafted in order to obtain a search warrant on October 15, 2010, the day after the search at issue.   This affidavit indicates that on the day of his arrest, police observed defendant at the residence throwing several garbage bags into a dumpster. (Doc. 50-5, Affidavit of Probable Cause at 3 - 4).  Further, the affidavit indicates that defendant told the police that he had moved into the residence with his cousin two months previously.  (Id. at 4).  At the suppression hearing the DEA Agent in charge of the search, James Farano, indicated that it appeared that defendant had been living in the residence.  (N.T. at 16).

Defendant's position is that these facts establish that he had a

4

privacy interest in the area where the DEA found the drugs and other material.   The court disagrees.  These assertions might support some sort of privacy interest in the residence itself.  The police, however, did not find the evidence at issue in the residence.  As noted above, the police found the evidence under a tub next to a commercial garage.

The defendant presented no evidence to establish that he had a privacy interest in the area located under the tub next to the commercial garage, where the police found the drugs.   At best, the evidence indicates that a man, who may have been defendant's cousin, leased the property, perhaps even the area at issue.   The defendant indicated to the police that he lived with his cousin for several months.   This familial relationship and sharing the residence with the lessee does not create an expectation of privacy in the area where the agents found the evidence. This case is similar to <u>United States v. Mankari</u>, 738 F.2d 538, 545 (2d Cir. 1984).  In <u>Mankari</u>, the defendants occupied rooms in a farmhouse and made periodic visits to a barn located on the property.  The Second Circuit Court of Appeals concluded that those contacts did not give rise to a reasonable expectation of privacy in the barn, and thus the defendants lacked standing to challenge the seizure of evidence from the barn.  <u>Id.</u>

Accordingly, as in <u>Mankari</u>, we find that the defendant lacks standing to challenge the search and seizure at issue.

## II.  Actual and Apparent Authority

Even if defendant did have standing to challenge the search and seizure, we nonetheless, would deem the search reasonable as the landlord, who consented to the search, had actual and apparent authority to do so.  We will discuss actual authority and apparent authority

5

separately.

### A.  Actual Authority[1]

Where two or more parties jointly occupy premises, the consent to search provided by one party is valid against the co-occupier.  <u>United States v. Matlock</u>, 415 U.S. 164 (1974).  To establish that a warrantless search is reasonable on the basis of actual authority of one of the occupiers, the government must establish that the parties had joint access or control for most purposes and that consent was provided freely and voluntarily.  <u>Id.</u>  at 171.

Here, the government presented evidence that the landlord who consented to the search had indeed leased the house.  She, however, "maintained access to almost five acres, a commercial garage and equipment that was still there.  She and her husband had daily access to the property."  (N.T. at 8).

Additionally, the "Consent to Search" form indicates that the landlord provided consent freely and was not threatened or forced in anyway.  (Doc. 63, Gov't Ex. 1, Consent to Search).   Accordingly, the government established free and voluntary consent to an area of joint access or control. The landlord thus had actual authority to consent, and the search was reasonable.

### B. Apparent Authority

Assuming for the sake of argument that the landlord did not have actual authority to consent to the search, the search would nonetheless be reasonable.  If the government official performing the search has a

---

[1]For purposes of addressing this argument, we will assume that the defendant established control or authority over the subject area.

6

reasonable belief that the consenter had the authority to consent then the search can be valid under the doctrine of "apparent authority."  The Supreme Court has explained as follows: "As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?"  Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990).  We must therefore examine the facts available to Agent Farano and whether they would have led a man of reasonable caution to the belief that the landlord had authority over the premises.

Agent Farano knew that the person who leased the property no longer resided there.  (N.T. 7).  Additionally, the defendant no longer lived there, as he was imprisoned.  Not only was he imprisoned, but immigration officials had lodged a detainer against him as he was in the country illegally.  (N.T. 5 - 6).  Thus, he was unlikely to ever return to the property.  Faced with property, and an empty residence, the government contacted the owner/landlord of the property.  Given the circumstances it was reasonable for the officers to believe that she had authority to consent to the search.  Accordingly, even if the defendant had standing and the landlord had no actual authority, she did have apparent authority to consent to the search and the warrantless search is reasonable.

**Conclusion**

Based upon the foregoing, the court finds that the defendant does not have standing to challenge the search at issue.  He has not established that he had any expectation of privacy in the area where the government

found the contraband.  Moreover, the landlord had actual authority to provide consent to the search and she freely and voluntarily provided such consent.  And even if she did not have actual authority, she had apparent authority such that a man of reasonable caution would be warranted in the belief that she had authority of the premises.   Accordingly, the motion to suppress will be denied.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:09cr365** |
| | : | |
| **v.** | : | **(Judge Munley)** |
| | : | |
| **JORGE VALDEZ a/k/a** | : | |
| **ROBERTO VASQUEZ** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

    **AND NOW**, to wit, this 31st day of October 2011, the defendant's motion to suppress (Doc. 50) is hereby **DENIED**.

                    **BY THE COURT:**


                    **s/ James M. Munley**
                    **JUDGE JAMES M. MUNLEY**
                    **United States District Court**

9